UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

MIAMI SUBS FRANCHISING CORP. and
MIAMI SUBS OF DELAWARE, INC.,

       Plaintiffs,

vs.

MAZAH TRADING & CONTRACTING
COMPANY LIMITED and
ABDULELLAH ALZARAH,

       Defendants.
_____/

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiffs, Miami Subs Franchising Corp. ("MSFC") and Miami Subs of Delaware, Inc. ("MS"), sue Defendants Mazah Trading & Contracting Company Limited ("Mazah") and Abdulellah Alzarah ("Alzarah") and allege:

## NATURE OF THE CASE

1. This is a civil action brought by franchisor, MSFC, and its affiliate, MS, the licensor and owner of certain trademarks and trade dress of the "Miami Subs Grill" brand, against Defendants, former Area Developers of the Gulf Coast Countries Region of the Middle East including Saudi Arabia, Kuwait, United Arab Emirates, Oman, Qatar, and Bahrain (the "GCC"), pursuant to an Area Developer Agreement ("ADA") attached hereto as **Exhibit "A"** for, *inter alia*, trademark infringement, unfair competition, and breach of contract, including for violations of a non-competition covenant and failure to pay royalties that are due and owing.

1

## PARTIES

2. Plaintiff, MSFC, is a Florida corporation organized under the laws of Florida with a principal place of business in the State of Florida.

3. Plaintiff, MS, is a Delaware corporation, organized under the laws of Delaware with a principal place of business in the State of Florida.

4. Defendant, Mazah, is and was a foreign for-profit corporation organized and existing under the laws of the Kingdom of Saudi Arabia with its headquarters in Al Khobar, Saudi Arabia.

5. Defendant, Alzarah, is a foreign citizen of the Kingdom of Saudi Arabia and is otherwise *sui juris*.

## JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction over the federal claims in this action *inter alia* pursuant to 28 U.S.C. §§ 1331, 1332, and 1338, for federal question jurisdiction and diversity jurisdiction, and has supplemental subject matter jurisdiction over the state claims in this action *inter alia* pursuant to 28 U.S.C. § 1367(a).

7. Venue is proper in this District pursuant to the ADA attached hereto as **Exhibit "A"** in paragraph 22.2 which provides that "the parties agree that any action brought by ... MSFC against Area Developer in any court, federal or state, may be brought within the state and judicial district in which MSFC has its principal place of business." Plaintiff MSFC's principal place of business is Fort Lauderdale, Broward County, Florida.

## FACTS

8. Plaintiff MSFC and its predecessors are and have been engaged in the business of franchising Miami-themed quick service (and now fast casual) restaurants for decades.

9.      Plaintiff MS owns and licenses to Plaintiff MSFC various trademarks and service marks, including the names "Miami Subs", "Miami Subs Grill" and "Miami Grill", and Plaintiff MSFC uses these trademarks and service marks in their franchised restaurants (the "Mark").

10.     Among the numerous filed and registered federal trademarks comprising the Mark that Plaintiff MS licenses to Plaintiff MSFC are the following:

| Mark | Code | Registration No. | Registration Date |
|---|---|---|---|
| [Miami Subs Grill logo] | DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS | 2066230 | June 3, 1997 |
| [Miami Subs Grill building design] | DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS | 2128013 | January 13, 1998 |
| MIAMI SUBS | TYPED DRAWING | 1877052 | January 31, 1995 |
| [Miami Grill logo] | DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS | 78709202 | July 8, 2008 |
| [Miami Grill logo with palm tree] | DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS | 87004477 (SERIAL NO.) | April 18, 2016 (FILING DATE) |

11.     Plaintiff MSFC has obtained the exclusive right to use, promote and license the Mark in connection with Miami Subs Grill franchises. The Mark is registered with the United States

3

Patent and Trademark Office (USPTO). True and correct copies of these registrations from the USPTO website (www.uspto.gov) are attached as **Composite Exhibit "B"**.

12. Plaintiff MSFC also owns and uses a unique franchise system that includes store layout, signage and décor, which enables its many franchise locations in the United States and around the world to have uniform features (the "System"). Among the distinctive features of this System are particular interior and exterior store layouts, signage, design and décor, including wall treatment and color scheme inspired by South Beach with pastels trimmed with pink and blue neon lights and interiors decorated with a tropical motif. These and other features of the System comprise the franchises' "Trade Dress" which is described in the ADA and examples are attached hereto as **Composite Exhibit "C"**.

13. As part of the System, Area Developers are granted a limited license that allows them to use and license the Mark in connection with each franchised store. Use of the Mark under such licenses, however, is not permitted if the franchise agreement is terminated for whatever reason.

14. In exchange for the benefits of the Mark, the System, the Trade Dress, and other incidentals of Plaintiffs' brand name and goodwill, Defendants agreed to, *inter alia*, pay royalty fees of three percent (3%) on gross sales which must be reported on a point of sale system (POS) and a franchise fee of Twenty Thousand Dollars ($20,000.00) per store. The standard royalty fee percentage of gross revenues was six percent (6%) and the standard franchisee fee was $30,000. Thus, both fees to be paid by Defendants to Plaintiff MSFC were substantially reduced because Defendants were obligated to develop 55 stores.

15. Plaintiffs have spent vast quantities of time, money and resources developing their brand recognition and valuable goodwill. Indeed, the "Miami Subs" and "Miami Grill" Marks and Trade Dress are recognized domestically and internationally.

### Defendants Become Area Developer of Plaintiff MSFC

16. On or about December 29, 2012, Defendant Alzarah appeared at Plaintiff MSFC's office in Fort Lauderdale, Florida, for the purpose of negotiating a contract which would appoint his company, Defendant Mazah, as an exclusive representative of Plaintiff MSFC in a given territory.

17. As a result of said negotiations, Plaintiff MSFC and Defendant Mazah entered into the ADA attached as **Exhibit "A"** at Plaintiff MSFC's office wherein, by its terms, Plaintiff MSFC authorized and Defendants agreed to develop franchises for Plaintiff MSFC in several countries within the GCC.

18. By virtue of the ADA, Defendant Mazah became the exclusive Area Developer for Plaintiff MSFC in the GCC and, thus, Plaintiff MSFC was not able to develop the territory which included Saudi Arabia, Kuwait, United Arab Emirates, Oman, Qatar, and Bahrain, by itself or through a third party Area Developer.

### Defendants' Breach of their Contractual Obligation

19. Pursuant to the development schedule attached as exhibit "C" to the ADA (the "Development Schedule"), Defendants represented and agreed that they would develop the GCC by opening and operating fifty-five (55) Miami Subs Grill restaurants over a period of twenty (20) years.

20. Defendants agreed to pay Plaintiff MSFC the sum of twenty thousand dollars ($20,000) as a franchisee fee for each Miami Subs Grill restaurant sold by Defendants in the GCC. Over the course of the twenty-year development schedule, Plaintiff MSFC was to earn $1.1 million in franchise fees from Defendants.

21. In addition, Defendants agreed and were obligated to pay Plaintiff MSFC three percent (3%) of the gross sales of each franchised restaurant sold by Defendants in the GCC.

22. Defendants sent their chef, a manager, and other representatives to Plaintiff MSFC's office in Fort Lauderdale, Florida, to be trained and Plaintiff MSFC spent a significant amount of time training Defendants' representatives.

23. On information and belief, Defendants discharged these representatives and failed to have Plaintiff MSFC train any additional representatives.

24. Defendants were obligated by the ADA to comply with the development schedule which required five of the fifty-five (55) restaurants to be developed within the first five years. After the passage of almost three years, Defendants had not developed or opened a single "Miami Subs Grill" franchised restaurant, which prompted discussions between the parties at Plaintiff MSFC's office in Fort Lauderdale, Florida.

25. On December 13, 2015, Plaintiff MSFC and Defendants entered into an amendment to the ADA (the "First Amendment"). A copy of the Amendment is attached hereto as **Exhibit "D"**. Hereinafter, all references to the "ADA" shall mean the Area Development Agreement as amended by the Amendment.

26. The First Amendment reduced Defendants exclusive territory from the entire GCC to just developing the Kingdom of Saudi Arabia. The First Amendment also required, *inter alia*, Defendants to develop the first franchised restaurant in the Kingdom of Saudi Arabia and pay Plaintiff MSFC at least twenty thousand dollars ($20,000) as a franchise fee within six (6) months of execution of the Amendment.

27. On or about March 9, 2016, Defendants further amended the ADA and First Amendment by agreeing to reduce their territory within the Kingdom of Saudi Arabia by

releasing three cities – Mecca, Medinah and Jeddah – back to Plaintiffs in exchange for twenty percent of net profit from royalty fees and franchise fees received by Plaintiffs for five (5) years (the "Second Amendment") from a third party that had offered to buy and develop these three (3) territories.

28. Defendants failed to develop a "Miami Subs Grill" franchise restaurant or pay Plaintiff MSFC the $20,000 franchise fee within the six (6) months after the parties executed the Amendment. Prior to Defendants' breach of the First Amendment, Plaintiffs sent several emails and certified mail communications demanding the franchise fee discussed therein, and Plaintiffs were told by Defendants that it was forthcoming. The franchise fee due under the First Amendment was never paid. Accordingly, on June 21, 2016, Plaintiffs, sent a formal notice of termination of the ADA (and the First and Second Amendment) pursuant to paragraphs 12.2.1 and 12.2.5 and invoked the post-termination covenants in paragraph 13 (the "Notice of Termination"). A copy of the Plaintiffs' Notice of Termination is attached hereto as **Exhibit "E"**.

### Defendants' Failure to Cease Using the Mark, Trade Dress and System

29. The post-termination covenants in the ADA include, in pertinent part, the following:

> **13. OBLIGATIONS UPON TERMINATION OR EXPIRATION**
> Upon termination or expiration of this Agreement, all rights granted hereunder to Area Developer shall forthwith terminate, and Area Developer shall comply with Sections 13.1 through 13.7 below:
>
> 13.1 Area Developer shall immediately cease to operate the Area Developer Business and shall not thereafter, directly or indirectly, represent to the public or hold itself out as having any affiliation, past or present, with MSFC and/or the System....
>
> 13.2 Area Developer shall immediately and permanently cease to use the Proprietary Marks and distinctive forms, slogans, signs and symbols associated with the Area Developer Program and the System. Area Developer shall also cease to use, without limitation, all signs, advertising materials, stationery, forms, and any other articles that display the Proprietary Marks....

7

    13.4    Area Developer agrees, in the event it continues to operate or subsequently begins to operate any other business, not to use any reproduction, counterfeit, copy or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute the rights of MSFC, and its affiliates and subsidiaries' rights in and to the Proprietary Marks, and further agrees not to utilize any designation of origin or description or representation which falsely suggests or represents an association or connection with MSFC constituting unfair competition.

    13.5    Area Developer shall promptly pay all sums owing to MSFC, and its affiliates and subsidiaries under this Agreement. In the event of termination for any default of Area Developer, such sums shall include all damages, costs and expenses, including reasonable attorneys' fees and expenses, incurred by MSFC or such affiliates or subsidiaries as a result of the default, which obligation shall give rise to and remain, until paid in full, a lien in favor of MSFC against any and all of the personal property, furnishings, equipment, signs, fixtures, and inventory owned by Area Developer and on the premises used in the Area Developer Business. MSFC shall have the right to set-off any amounts which it deems are payable to it by Area Developer...

30.    In or about September 2016, Plaintiff MSFC learned that Defendants opened and were operating a restaurant called "Miami Fire Grill" in the city of Dammam in the Kingdom of Saudi Arabia using the System and the Trade Dress owned by Plaintiff MSFC and the Mark licensed to Plaintiff MSFC by its owner Plaintiff MS.

31.    Specifically, Defendants constructed a restaurant that began as a Miami Grill but, prior to opening, Defendants changed the name to "Miami Fire Grill" and continue to use Plaintiffs' Mark, System and Trade Dress in the operation of that restaurant.

32.    At all material times, Defendants have promoted "Miami Fire Grill" on social media using pictures of the restaurant that looks identical to the "Miami Grill" branded restaurants and which operates using Plaintiffs' "Miami Grill" branded products. Copies of photographs obtained by Plaintiff MSFC of Defendants' "Miami Fire Grill" and "Miami Fire Grill's" social media presence is attached hereto as **Composite Exhibit "F"**.

33. Defendants have failed to comply with their post-termination obligations under the ADA and continue to operate "Miami Fire Grill" as of the date of filing this Complaint.

34. Despite Defendants having breached the ADA and despite Plaintiffs' valid termination of the ADA, Defendants continue to violate the post-termination restrictive covenants contained in the ADA, by utilizing Plaintiffs' Mark, System and Trade Dress, and by associating themselves and their restaurant with Plaintiffs' brand.

35. This conduct on the part of Defendants, is in violation of their post-termination obligations under the ADA, as well as, *inter alia*, a violation of the Lanham Act.

36. Defendant Alzarah is personally liable for the acts discussed herein as he intentionally and deliberately authorized and approved the use of Plaintiffs' Mark, Trade Dress, and System.

37. Defendant Alzarah was the moving force in the decision to engage in violations of the Lanham Act including, *inter alia*, infringing on Plaintiffs' Mark and therefore faces personal liability for Defendant Mazah's actions.

38. Moreover, Defendant Alzarah was the personal guarantor on the ADA pursuant to the "Guarantee, Indemnification and Acknowledgement" attached as exhibit "B" to the ADA (the "Guarantee") wherein Defendant Alzarah unconditionally guaranteed all payments due under the ADA and agreed to be individually bound by, *inter alia*, the post-termination covenants in Section 13 thereof.

## **Irreparable Harm and Other Damage**

39. Unless Defendants are enjoined from using the Mark, System and Trade Dress, and Plaintiffs' brand name generally, and from continuing to breach their non-compete and post-termination covenants in Section 13 of the ADA, Plaintiffs are being and will continue to be irreparably harmed in the nature of:

a. Confusion of customers who intend to do business with a legitimate Miami Grill Area Developer and/or franchisee;

b. Damage to customer goodwill and the confidence and trust that customers repose in Plaintiffs and their franchisees;

c. Disturbance of the relationship between Plaintiffs and Plaintiffs' Area Developers and franchisees with customers;

d. Damage to Plaintiffs' business reputation;

e. Loss of confidence in Plaintiffs' remaining franchisees and prospective franchisees and Area Developers who rely on Plaintiffs to enforce non-competition agreements; and

f. Damage to the continued viability of the Plaintiffs' franchise system in the Middle East and beyond.

40. Irreparable harm to Plaintiffs also is resulting from Defendants' breach of their non-compete and post-termination covenants because Defendants' continued operation of a "Miami Fire Grill" interferes with Plaintiffs' ability to establish a new, legitimate Area Developer in that market area.

41. Specifically, another investor who was looking to become an Area Developer in the GCC has withdrawn its offer to Plaintiffs due to the actions of Defendants operating a competing business using the Mark, System and Trade Dress of Plaintiffs in violation of Defendants' non-compete and post-termination obligations under the ADA.

42. Defendants' continued willful disregard of the non-compete covenants could also lead to other franchisees, former franchisees or Area Developers of Plaintiff MSFC to engage in similar conduct, either by continuing to operate a franchised restaurant after the franchise

agreement or ADA is terminated or by engaging in the sale of products and services that are competitive to Plaintiffs' products and services. Such conduct would constitute irreparable loss of customer goodwill associated with the Mark, the System, and the Trade Dress.

43. All conditions precedent to bringing this action have occurred, have been waived, or have been otherwise satisfied.

### COUNT I - TRADEMARK AND SERVICE MARK INFRINGEMENT
### UNDER SECTION 32 OF THE LANHAM ACT (15 U.S.C. §1114)

44. Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 43 of the Complaint.

45. Defendants currently are using the Mark even though their license to do so has been terminated and Plaintiffs no longer consent to Defendants' use of the Mark.

46. Defendants' conduct is in willful violation of their contractual obligations to Plaintiffs and the Lanham Act.

47. Defendants' use of the Mark in connection with the operation of a competing restaurant has and will cause confusion or mistake in the minds of the public and cause purchasers to believe that the goods and services being offered or intended to be offered were the goods and services of Plaintiffs' trademark and service mark rights.

48. Defendants' infringement was and is a willful attempt to deceive the public, trade upon the goodwill of Plaintiffs, and cause irreparable harm to Plaintiffs.

49. The conduct of Defendants constitutes fraud and deceit upon the consuming public.

50. Defendants' conduct has resulted and will continue to result in the loss of Plaintiffs' goodwill and have caused and will continue to cause Plaintiffs irreparable injury.

51. Plaintiffs have no adequate remedy at law.

## COUNT II – UNFAIR COMPETITION
## UNDER SECTION 43(A) OF THE LANHAM ACT (15 U.S.C. §1125(A))

52. Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 43 of the Complaint.

53. Defendants are operating a restaurant called "Miami Fire Grill" using the Mark, the Trade Dress and the System of Plaintiffs and its franchisees. Defendants are misusing the Mark, the Trade Dress and the System per se.

54. Defendants are operating a restaurant in a manner identical or closely related to the manner under which restaurants are run under the System and Trade Dress, including by using and displaying numerous elements of Plaintiffs' Trade Dress.

55. The interior and exterior appearance of Defendants' "Miami Fire Grill" restaurant is identical or closely related to the interior and exterior appearances of legitimate "Miami Grill" franchised restaurants.

56. Defendants' continued use of Plaintiffs' Mark, System and Trade Dress has and will cause mistake or confusion in the marketplace in the minds of restaurant goers and will lead them to believe that Defendants' products and services are those of Plaintiffs' or one of its authorized franchisees.

57. Use by Defendants of Plaintiffs' Mark, System and Trade Dress for its services and goods constitutes unfair competition under the Lanham Act.

58. Defendants are deliberately attempting to trade upon the goodwill of Plaintiffs by selling and advertising Defendants' good and services as to the goods and services of Plaintiffs.

59. Defendants' conduct constitutes a fraud and deceit upon the consuming public.

60. The conduct has resulted and will continue to result in the loss of Plaintiffs' goodwill and has caused and will continue to cause Plaintiffs irreparable injury.

61.  Plaintiffs have no adequate remedy at law.

## COUNT III – UNFAIR COMPETITION UNDER FLORIDA LAW

62.  Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 43 of the Complaint.

63.  By engaging in the conduct described herein, including, but not limited to, Defendants unlawful use of Plaintiffs' Mark, System and Trade Dress, violating the non-compete covenants of the ADA, and misappropriating Plaintiffs' proprietary and confidential information, Defendants have engaged in unfair competition with Plaintiffs.

64.  The conduct of Defendants is willful, intentional and unprivileged, and has caused and is continuing to cause irreparable harm as well as monetary damages to Plaintiffs.

65.  Plaintiffs have no adequate remedy at law.

## COUNT IV – VIOLATION OF ANTI-DILUTION UNDER SECTION 43(C) OF THE LANHAM ACT (15 U.S.C. §1125(C))

66.  Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 43 of the Complaint.

67.  Plaintiffs' Mark is distinctive and famous, and has been used and advertised by Plaintiff continuously domestically and internationally for decades.

68.  Plaintiffs' Mark has received extensive publicity both as a result of the efforts of Plaintiffs and through third party recognition.

69.  Plaintiffs' Mark is famously associated and extensively recognized with the services and products offered by Plaintiff including, but not limited to, its franchised restaurants.

70.  The acts of Defendants described herein, including, but not limited to, their unlawful use of Plaintiffs' Mark, System and Trade Dress, violate of the non-compete covenants of the ADA, and misappropriate of Plaintiffs' proprietary and confidential information. Such actions on

Defendants' part have caused irreparable dilution of the distinctive quality of Plaintiffs' Mark and were and are intended to undermine the uniqueness and distinctiveness of the Plaintiffs' Mark, and constitute dilution by blurring Plaintiffs' Mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

71. The conduct of Defendants is willful, intentional and unprivileged, and has caused and is continuing to cause irreparable harm as well as monetary damages to Plaintiffs.

72. Plaintiffs have no adequate remedy at law.

## COUNT V – BREACH OF CONTRACT
## POST-TERMINATION AND NON-COMPETE COVENANTS

73. Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 43 of the Complaint.

74. Plaintiff MSFC and Defendants were in contractual privity at all material times under the ADA.

75. Defendants have violated and are continuing to violate the non-compete covenants in the ADA by operating a restaurant in direct competition with Plaintiffs.

76. Defendants have violated are continuing to violate the post-termination covenants in the ADA by using a "reproduction, counterfeit, copy or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute the rights of Plaintiff MSFC, and its affiliates and subsidiaries' rights in and to the Proprietary Marks."

77. Defendants have further violated the post-termination covenants by "utilizing a designation of origin or description or representation which falsely suggests or represents an association or connection with Plaintiff MSFC constituting unfair competition."

78. The conduct of Defendants is willful, intentional, and unprivileged, and has caused and is continuing to cause irreparable harm as well as monetary damages to Plaintiffs.

79. Plaintiffs have no adequate remedy at law.

## COUNT VI – BREACH OF CONTRACT
## NON-PAYMENT OF ROYALTIES AND FRANCHISE FEES

80. Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 43 of the Complaint.

81. Plaintiffs had certain obligations under the ADA to pay royalties and franchise fees for fifty-five franchise units to be developed over twenty years.

82. Defendants failed to meet the Development Schedule which caused Plaintiffs to rightfully terminate the ADA.

83. As a direct and proximate result of Defendants' breach of the ADA, Plaintiffs have been damaged.

84. Defendants further owe Plaintiffs royalties and other fees based upon their unauthorized use of the Mark, System and Trade Dress.

85. The ADA provides that in the event that Plaintiffs are required to commence and prosecute formal legal proceedings for the collection of royalty fees, Defendants agree to reimburse any and all reasonable attorney's fees and costs.

86. Pursuant to the ADA, Plaintiff MSFC was granted a security interest in all of the personal property used in connection with the Defendants' restaurant (the "Collateral") as security for the payment of royalty fees.

87. To the extent that the Collateral is not attached to real estate, Plaintiffs demand that the Collateral be assembled and turned over to Plaintiffs for liquidation as a secured party under the Uniform Commercial Code or other applicable law.

## COUNT VII – BREACH OF GUARANTY AGAINST ALZARAH

88. Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 43 of the Complaint.

89. Defendant Alzarah signed as and agreed to be the guarantor of Defendant Mazah's obligations under the ADA.

90. Pursuant to the Guarantee, Defendant Alzarah is individually responsible for Defendant Mazah's default and breach of the ADA.

91. Defendant Alzarah is obligated under the Guarantee to pay for Plaintiffs damages as a result of Defendant Mazah's breach of the ADA including its non-compete and post-termination obligations.

92. As a result of Defendant Mazah's breach of the ADA, Plaintiffs have been damaged and will be seeking all available damages against Defendant Alzarah, including lost royalties, lost franchise fees, lost profits, in excess of $50 million and any other available damages available under the law.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, Miami Subs Franchising Corp. and Miami Subs of Delaware, Inc., demand judgment in their favor and against Defendants with respect to all Counts of the Complaint as follows:

1. That Defendants and their officers, agents, servants, employees, attorneys and all persons in active concert or participation with them be preliminarily and thereafter permanently enjoined from using Plaintiffs' Mark, Trade Dress and System, or any elements thereof, in connection with the operation of the "Miami Fire Grill" or any related restaurant using Plaintiffs' Mark, Trade Dress and System;

2. That Defendants be required to make such changes in the building and structure and other trade dress, so as to indicate to the public that Defendants and their restaurant are no longer associated with Plaintiffs in any manner and that Defendants are no longer entitled to use the Mark, System or Trade Dress, including, but not limited to, the "Miami Fire Grill" branded restaurant in Dammam, Kingdom of Saudi Arabia, and any other "Miami Fire Grill" branded restaurants opened and operated by Defendants or their affiliates;

3. That Defendants be required to comply with all outstanding obligations under the ADA including, but not limited to, returning to Plaintiffs all of Plaintiffs' proprietary materials and information;

4. That Defendants be preliminarily and thereafter permanently enjoined for a period of one (1) year from the date of entry of such injunction from operating a restaurant that involves the sale of products and services that compete with Plaintiffs' restaurants;

5. That Defendants be preliminarily and thereafter permanently enjoined from effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the directives of the injunction;

6. That Defendants be required to make a verified report to the Court within thirty (30) days setting forth all actions taken by Defendants to comply with the injunction and the dates such actions were taken;

7. That Defendants be required to provide an accounting of all sales, revenues and fees received by it during the operation of the "Miami Fire Grill" using the Plaintiffs' Mark, System and/or Trade Dress;

8. That Plaintiffs be awarded damages in the amount of the past due, and future, royalties and any other owed fees and all of Defendants' profits, gains or advantages of any kind

resulting from Defendants' unfair competition, as well as interest on said amounts and attorneys' fees;

9. As to any and all Collateral not affixed to real estate, that Defendants be directed and ordered to assemble and turnover said Collateral to Plaintiffs for liquidation by Plaintiffs as secured parties under the UCC or other applicable law with the proceeds to be applied towards satisfaction of the amount due and owing Plaintiffs under the ADA;

10. That Defendants pay lost profits, to the extent available under the applicable law, including the franchise fees for the fifty-five (55) units Defendants agreed to develop under the ADA and/or royalty fees based on gross revenues of Plaintiffs' restaurants which damages exceed $50 million;

11. That all damages be trebled as appropriate pursuant to, *inter alia,* Section 35(b) of the Lanham Act;

12. That Plaintiffs be awarded pursuant to Section 35(a) of the Lanham Act to punish Defendants for its willful misconduct;

13. That Plaintiffs be awarded punitive damages based upon Defendants' willful and intentional unfair competition and tortious conduct as set forth above as Defendant Mazah has several subsidiaries and is involved with many areas of business within the Kingdom of Saudi Arabia and Defendant Alzarah is extremely wealthy and, on information and belief, comes from royalty;

14. That Defendants be directed to pay all of Plaintiffs' costs connected with this action, including reasonable attorneys' fees, as authorized by the ADA and any other source or law;

15. That Plaintiffs be given such other and further relief as the Court may deem just and proper.

Dated this 27th day of October, 2016.

> Respectfully submitted,
>
> */s/ Adam G. Wasch*
> Adam G. Wasch
> Florida Bar No. 71082
> awasch@waschraines.com
> **WASCH RAINES LLP**
> 2500 N. Military Trail, Suite 465
> Boca Raton, Florida 33431
> Telephone: 561-693-3221
> Facsimile: 561-404-1104
>
> Attorneys for Plaintiffs

### PLAINTIFFS' VERIFICATION OF FACTUAL ALLEGATIONS

I declare under penalty of perjury that the foregoing factual allegations are true and correct.

Executed in Fort Lauderdale, Florida, this 27th day of October, 2016.

> _____
> Bernard H. Vogel, President/CEO
> Miami Subs Franchising Corp.
> Miami Subs of Delaware, Inc.

19